UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IYANA SCOTT, | ) | |
| | ) | |
| PLAINTIFF, | ) | **COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| HAZEL CREST CHICKEN, INC., | ) | |

## COMPLAINT

NOW COMES, the Plaintiff IYANA SCOTT ("Plaintiff"), by and through her attorneys, GAINSBERG LAW, P.C., complaining of the Defendant, HAZEL CREST CHICKEN, INC. ("Defendant") and states as follows:

## PARTIES

1. At all times relevant to this Complaint, Plaintiff was a citizen of the State of Illinois, in this judicial district.

2. Plaintiff's sex and gender are female.

3. At all times relevant to this Complaint, Defendant owned and/or operated and/or managed and/or maintained a Popeye's Chicken franchise located at 18240 Kedzie Ave, Hazel Crest, IL, 60429.

4. At all times material to this Complaint, Defendant had more than 15 employees within the State of Illinois.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over all counts within this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

6. Venue is properly placed in this District because the Defendants are transacting business in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District pursuant to 28 U.S.C. §1391(b)(2) and (3).

7. Plaintiff was constructively discharged on October 18, 2021 and timely filed the associated EEOC/IDHR charges in this matter against Defendant: EEOC Charge No. 440-2022-08681.

8. Plaintiff received her NRTS letters from the EEOC for both Defendant on September 20, 2022.

9. Plaintiff has satisfied all statutory prerequisites to pursuing her claims.

## GENERAL ALLEGATIONS

10. On or about July 23, 2021, Defendant hired Plaintiff as a cashier at the Popeye's Chicken franchise.

11. At all times during her employment, Plaintiff performed to the legitimate business expectations of Defendant.

12. Shortly after starting her employment, Plaintiff began to be routinely sexually harassed by a much older male manager named "Larkin".

13. "Larkin" was sexually abusing other female minor coworkers who were in vulnerable family situations, and Plaintiff saw "Larkin" sexually touching one female minor co-worker on shift.

14. "Larkin" made sexually inappropriate comments to Plaintiff regarding anal sex that Plaintiff told him it was unwelcome.

15. "Larkin" made sexually inappropriate comments to Plaintiff about being "R. Kelly" and urinating on all of the young women he managed.

16. "Larkin" frequently made sexually charged comments about Plaintiff and other young female coworkers of Plaintiff.

17. In October 2021, "Larkin" asked Plaintiff for her bra size. Following this comment Plaintiff reported "Larkin" to a female manager who admitted that management knew "Larkin" was sexually harassing young women and that Plaintiff was not the first to complain.

18. When "Larkin" became aware Plaintiff complained about him, he sent her home.

19. The following day, Plaintiff reported "Larkin" to "Anita", a female manager over "Larkin".

20. "Anita" ignored Plaintiff's complaint and was herself sexually harassing another minor employee who also worked for Defendant and permitted "Larkin's" behavior.

21. Plaintiff continued to be scheduled night shifts with "Larkin".

22. Plaintiff feared for her safety around "Larkin" who was actively sexually abusing minors at her workplace, aggressively sexually harassing Plaintiff, and retaliating against her for complaining.

23. Plaintiff attempted to resolve these issues and was ignored and told to ignore "Larkin".

24. Plaintiff's workplace was subjectively and objectively intolerable.

25. Defendant had actual and/or constructive knowledge of sexual harassment complaints made by female employees against "Larkin", including Plaintiff's complaints.

26. On October 18, 2022, Plaintiff left due to this objectively intolerable and subjectively intolerable sexually hostile and retaliatory working environment and was constructively discharged by Defendant, in violation of Title VII and the Illinois Human Rights Act.

27. Defendant failed to conduct a timely investigation into Plaintiff's complaints regarding the sexually predatory behavior of "Larkin".

28. "Anita" permitted "Larkin's" sexually predatory behavior and engaged in her own sexually predatory and abusive behavior with minor employees.

29. Defendant failed to take prompt or adequate corrective action once becoming aware of the sexually predatory behavior of "Larkin".

30. Defendant failed to maintain effective policies to prevent sexual harassment and sexual abuse of the type and kind experienced by Plaintiff and other minor coworkers.

31. The actions permitted by Defendant during Plaintiff's employment were extreme and outrageous, and shocking to the conscience and constituted an intolerable sexually hostile and retaliatory environment in violation of Title VII and the Illinois Human Rights Act.

32. As a direct and proximate result of Plaintiff's construction termination, Plaintiff sustained lost income, loss of reputation, emotional distress and mental anguish, incurred other pecuniary damages, and has incurred attorney's fees and costs.

33. The allegations set forth in Charge are not exhaustive recitation of the wrongful conduct of Defendant towards Plaintiff and have been drafted by counsel.

34. The allegations herein are not exhaustive of the wrongful conduct of the Defendants.

### COUNT I
### SEXUAL HARASSMENT and HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e, *et seq*.
### (Plaintiff v. Defendant)

1-34. Plaintiff re-states and re-alleges each and every allegation in Paragraphs 1-34 of this Complaint as though they are fully and completely set forth herein as Paragraphs 1-34 of Count I of this Complaint.

35. At all times relevant to this Complaint prior to her constructive discharge Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. 2000e(f).

36. At all times relevant to this Complaint prior to her constructive discharge Plaintiff Defendant within the meaning of 42 U.S.C. 2000e(b).

37. The sexual harassment described herein was unwanted by Plaintiff.

38. The sexual harassment was because of Plaintiff's female sex.

39. The sexual harassment unreasonably interfered with Plaintiff's work environment and performance and was so severe and pervasive that no reasonable person would have stayed in Plaintiff's position.

40. The actions of Defendant as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of her gender and sex, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq*.

41. At all times relevant to this cause of action, Defendant had a duty under Title VII to prevent Plaintiff from being subject to sexual harassment.

42. Defendant had a duty under Title VII to prevent the ongoing severe and pervasive sexually hostile work environment.

43. Defendant allowed its managers, supervisors and employees to sexually harass and/or create a sexually hostile work environment for Plaintiff on a regular and continuous basis.

44. Plaintiff repeatedly complained and/or reported the sexual harassment and sexually hostile work environment to Defendant and Defendant knew "Larkin" was severe and pervasive sexual harasser. Defendant had actual and/or constructive knowledge of the sexual harassment and severe and pervasive sexually hostile work environment.

45. Despite Defendant's actual and/or constructive knowledge of the sexual harassment and severe and pervasive sexually hostile work environment, Defendant refused to take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing harassment and sexually hostile work environment.

46. The discriminatory actions by Defendant, through their management agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff.

47. Defendant, by and through its agents and employees, engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

48. As a proximate result of the constructive discharge and sexual harassment and retaliatory hostile work environment described herein, Plaintiff has suffered pecuniary and non-pecuniary damages, including loss of income and benefits, severe emotional distress, mental anguish, damage to her reputation and has incurred attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Defendant Hazel Crest Chicken, Inc., for the following:

a. Damages sufficient to compensate Plaintiff for her damages including but not limited to lost income, loss to reputation and emotional distress;

b. Punitive damages;

c. Pre-judgment and post-judgment interest;

d. Reasonable attorney's fees;

e. An award of litigation costs and expenses; and

f. Any and all other relief that this Honorable Court may deem just and equitable

## COUNT II
### CONSTRUCTIVE DISCHARGE - SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e, *et seq*.
### (Plaintiff v. Defendant)

1-34. Plaintiff re-states and re-alleges each and every allegation in Paragraphs 1-34 of Count I of this Complaint as though they are fully and completely set forth herein as Paragraphs 1-34 of Count II of this Complaint.

35. As described herein, the sexual harassment and retaliatory harassment endured by Plaintiff while employed by Defendant was so intolerable, severe and pervasive that a reasonable person would have quit.

7

36. This severe and pervasive sexual harassment, together with the retaliatory actions of Defendant, was what caused Plaintiff to stop coming to work at the CDW Warehouse on October 18, 2021, and constituted a constructive discharge.

37. The actions of Defendant as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of her gender and sex, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq*.

38. At all times relevant to this cause of action, Defendant had a duty under Title VII to prevent Plaintiff from being subject to sexual harassment.

39. Defendant had a duty under Title VII to prevent the ongoing severe and pervasive sexually hostile work environment.

40. Defendant allowed its managers, supervisors and employees, to sexually harass and/or create a sexually hostile work environment for Plaintiff on a regular and continuous basis.

41. Plaintiff repeatedly complained and/or reported the sexual harassment and sexually hostile work environment to Defendant knew Larkin was severe and pervasive sexual harasser. Defendant had actual and/or constructive knowledge of the sexual harassment and severe and pervasive sexually hostile work environment.

42. Despite Defendant' actual and/or constructive knowledge of the sexual harassment and severe and pervasive sexually hostile work environment, Defendant refused to take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing harassment and sexually hostile work environment.

43. The discriminatory actions by Defendant, through their management agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff.

44. Defendant, by and through its agents and employees, engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

45. As a proximate result of the constructive discharge and sexual harassment and retaliatory hostile work environment described herein, Plaintiff has suffered pecuniary and non-pecuniary damages, including loss of income and benefits, severe emotional distress, mental anguish, damage to her reputation and has incurred attorneys' fees.

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

a. Damages sufficient to compensate Plaintiff for her damages including but not limited to lost income, loss to reputation and emotional distress;

b. Punitive damages;

c. Pre-judgment and post-judgment interest;

d. Reasonable attorney's fees;

e. An award of litigation costs and expenses; and

f. Any and all other relief that this Honorable Court may deem just and equitable

**COUNT III**
**CONSTRUCTIVE DISCHARGE - RETALIATION FOR OPPOSING SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e-3(a)**
**(Plaintiff v. Defendant)**

1-34. Plaintiff re-states and re-alleges each and every allegation in Paragraphs 1-34 of this Complaint as though they are fully and completely set forth herein as Paragraphs 1-34 of Count III of this Complaint.

35. As described herein, the sexual harassment and retaliatory harassment endured by Plaintiff while employed by Defendant was so intolerable, severe and pervasive that a reasonable person would have quit.

36. This severe and pervasive retaliatory and sexual harassment was what caused Plaintiff to stop coming to work on October 18, 2021 and constituted a constructive discharge.

37. The actions of Defendant as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of her opposition to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-3(a).

38. At all times relevant to this cause of action, Defendant had a duty under Title VII to prevent Plaintiff from being subject to additional harassment in retaliation for opposing sexual harassment.

39. Defendant had a duty under Title VII to prevent the ongoing severe and pervasive hostile work environment in retaliation for opposing sexual harassment.

40. Defendant allowed its managers, supervisors and employees, to retaliate against Plaintiff for opposing sexual harassment, sexually harass and/or create a sexually hostile work environment for Plaintiff on a regular and continuous basis.

41. Plaintiff repeatedly complained and/or reported the retaliatory and sexual harassment and retaliatory and sexually hostile work environment to and Defendant knew "Larkin" was a severe and pervasive sexual harasser. Defendant had actual and/or constructive knowledge of the retaliatory and sexual harassment and severe and pervasive retaliatory and sexually hostile work environment.

42. Despite Defendant's actual and/or constructive knowledge of the retaliatory and sexual harassment and severe and pervasive retaliatory and sexually hostile work environment, Defendant refused to take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing harassment and sexually hostile work environment.

43. The discriminatory actions by Defendant, through their management agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff.

44. Defendant, by and through its agents and employees, engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

45. As a proximate result of the constructive discharge and sexual harassment and retaliatory hostile work environment described herein, Plaintiff has suffered pecuniary and non-pecuniary damages, including loss of income and benefits, severe emotional distress, mental anguish, damage to her reputation and has incurred attorneys' fees.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiff v. Defendant)**

1-34. Plaintiff re-states and re-alleges each and every allegation in Paragraphs 1-34 of this Complaint as though they are fully and completely set forth herein as Paragraphs 1-34 of Count IV of this Complaint.

35. The unwanted pedophilic sexual predation by "Larkin" against Plaintiff as set forth herein was criminal, extreme and outrageous, caused severe emotional distress to Plaintiff and constituted intentional infliction of emotional distress.

36. Defendant was reckless in employing "Larkin" and knew of his criminal sexual acts against minors.

37. Defendant ratified the intentional infliction of emotional distress against Plaintiff by "Larkin" by permitting him to criminally sexually abuse minors employed at their establishment and discouraging Plaintiff from further reporting his criminal behavior and by continuing his employment.

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

a. Damages sufficient to compensate Plaintiff for her damages including but not limited to lost income, loss to reputation and emotional distress;

b. Punitive damages;

c. Pre-judgment and post-judgment interest;

d. An award of litigation costs and expenses; and

e. Any and all other relief that this Honorable Court may deem just and equitable

**JURY TRIAL DEMANDED ON ALL AVAILABLE COUNTS.**

Respectfully submitted,


By:   /s/ Nicholas Kreitman
      Nicholas Kreitman
      Plaintiff's Attorney

Nicholas Kreitman
Gainsberg Law, P.C.
22 West Washington Street
15th Floor
Chicago, IL 60602
Attorney ID # 6313283
(847) 970-0575
nick@gainsberglaw.com